Mr. Carfagno? May it please the Court. My name is Jonathan Carfagno. I'm a third year law student at the University of Notre Dame, and under the supervision of Mr. Robert Palmer, I represent the appellant in this matter, Mr. John Thomas. Your Honors, the appellant's opening argument will primarily focus on challenging the underlying conviction for two main reasons. First, the district court committed plain error when it improperly allowed the government's primary witness, Ms. Whitney Blackwell, to testify the highly prejudicial other acts in violation of Federal Rule of Evidence 404B. Second, the government's warrantless acquisition of Mr. Thomas' historical cell site location information infringed upon his Fourth Amendment rights. And alternatively, should this court not find grounds to reverse Mr. Thomas' conviction, the appellant further argues that his sentence should be vacated and the case remanded for resentencing because the sentencing court improperly applied the mandatory minimum sentence. Turning to my first point, this court in United States v. Addison opined that in order for an individual to show plain error, they must first show, one, that there was an error, two, that it was clear or obvious, and three, that it affected the appellant's substantial rights. In the first prong of that analysis, FRE 404B prohibits the introduction of other acts to demonstrate that an individual has a propensity to commit a certain type of crime. In fact, 404B has a very limited number of exceptions to prove motive, opportunity, intent, or the like. In this matter, Ms. Whitney Blackwell, on page 189 of the record, testified to incredibly prejudicial acts about Mr. Thomas' prior associations with other individuals. Specifically, she said, in response to how Mr. Thomas knew another individual, that she was able to, quote, go out, sell drugs, shoot people, and steal something. This goes directly to the crux... Mr. Carfagno, let me ask you, what would you have had the district judge or the prosecutor do differently here? In particular, Ms. Blackwell was obviously a very challenging witness. Yes, Your Honor. Virtually impossible to control. Yes, Your Honor. And unpredictable. A veteran trial defense attorney seemed to be satisfied with the actions taken or not taken to deal with these brief episodes in her testimony. What would you have had the district judge or prosecutor do differently? Yes, Your Honor. This question is twofold. One, the government admonished both the court and the defense attorney prior to Ms. Blackwell taking the stand about her possible proclivity to testify to whatever comes to her mind. In terms of what the government could have done in that case, they could have directed the witness in a manner in which they started to notice that she was having these tendencies to exert or testify to other acts that were harmful and prejudicial to Mr. Thomas. In fact, the government in its own brief concedes that the domestic violence incident in which Ms. Thomas... Excuse me, Ms. Blackwell testified to on page 190, merely the next page, subsequent page, after she testified to Mr. Thomas' ability to influence others to go out and shoot people, it was a 404B violation. Moreover, the court was put on notice about Ms. Blackwell's proclivity to testify to these types of other acts. Now, let me... I understand the criticism of Ms. Blackwell. Yes. But tell me what you would have had the prosecutor or district judge do differently without objection from the defense counsel. Specifically, the appellant argues that the district court judge should have either offered a curative instruction in the moment, stating that that was improper or... Offered or just done it unilaterally. Because we've... Our Gomez opinion really warns about the dangers of overemphasizing as opposed to just moving on. Yes, Your Honor. This court in the United States v. Gomez is concerned about judicial freelancing. However, the certain factual circumstances here militate towards a curative instruction that would have prevented or immediately rectified this troublesome testimony. That would have drawn attention to her outbursts. Yes, Your Honor. And that's the concern in the Gomez case, that judicial freelancing in jumping in with curative instructions where the parties may not want them and where it may actually do more harm than good is not a good idea. Yes, Your Honor. And while I'm hesitant to speculate about trial counsel's particular strategic moves, the objections that he had lodged after Ms. Blackwell had already testified, while not specifically to 404B, but to non-responsives, demonstrates that counsel had a problem or had an issue with Ms. Blackwell's testimony. In fact, the purpose of the federal rules... Right, and you got a sustained objection. Yes, Your Honor, on the second... On the second one, right? Yes. And so... Okay. Specifically, the federal rules of evidence are to ensure that an individual is not convicted for participation in past prior acts. The Second Circuit offers some persuasive authority here in United States Manifesto in that it worries about including these other acts which could have an individual being convicted not because of the crimes underlying being charged by the government, beyond a reasonable doubt, but because this individual has a propensity, has a character to act in that type of behavior. Right, and the principle underlying the rule, the evidentiary rule, is that strategic use of other acts is impermissible for the propensity inference. Yes, Your Honor. This is a fleeting remark by sort of a wild witness. This was not... The government certainly didn't invite this.  that the government invited this. No, Your Honor. Everybody was aware that she was unpredictable, and they were fleeting remarks. So the propensity inference was not emphasized here by anybody. No one attempted to make use of this other acts evidence. So even if it was a 404B violation, why isn't it harmless? Your Honor, the reason why it's not harmless, and this actually goes directly to United States v. Gomez, is that the particular 404B evidence that was offered, in testimonial form, would not have necessarily been... is not necessarily as equivalent to the Gomez case, in which there were other factors which demonstrated that that individual, in Gomez, it was a user quantity of cocaine, that there was other things that the government had proffered within their testimony to suggest that that individual had been the defendant that participated in the drug transaction. Here, it's distinguishable because the testimony of the government is trying to prove that Mr. Thomas had devised a complex kidnapping scheme through the utilization of multiple individuals and had the ability and the influence to be able to dictate their actions. That goes directly to the government's case, and Ms. Blackwell being able to testify that he has done it in the past could potentially raise the likelihood that the jury uses that inference in their deliberations, and that's what this court is meant to safeguard against. But the point is, she wasn't the only government's witness. There was massive evidence here of your client's direction of this kidnapping scheme and participation in it. Correct, Your Honor. Respectfully, 404B is designed, regardless, irrespective of the amount of evidence that the government presents. But the harmless error analysis does take account of the amount of evidence... Yes, Your Honor. Yes, harmless error certainly would take into account. And what's more similar here, a case that might be more similar to these facts would be United States v. Johnson, which this court also had decided one particular aspect of the case, while they did not find on harmless error on different grounds, an officer had testified the fact that he had multiple run-ins with the defendant in that case. And this court stated that it would be unlikely for the jury to have been able to divorce that type of statement from... from innocuous or other type of behavior, which is why that's more analogous. To be sure, the court did not ultimately find that plain error or harmless error had been violated, but it certainly... but it did not rule on that specific statement. Here, the facts are distinguishable, and because of the highly... I see that my time has elapsed by the minute. Finish. Thank you, Your Honor. Because of how prejudicial and the low probative value that United States v. Lee and United States v. Beasley and additionally in United States v. Gomez, Rule 403 still applies with full force. And when that 404B analysis is brought in, there's also the evaluation of whether or not the probative value outweighs the prejudice, in which this was very low probative value despite the very highly prejudicial nature. For the foregoing reasons, we respectfully request that this court reverse Mr. Thomas' conviction. Thank you. Mr. Reeks. May it please the court, Brian Reitz for the United States. I would like to start by answering the question what else could have been done and then move on to why any error was harmless about the 404B. First of all, I think from Appellant's principle brief in here, there's really nothing that has been suggested that the court or the prosecution could have done short of violating this court's instructions in Gomez. I would like to talk about what was done as well because the record here shows the government taking significant steps to try to prevent this from occurring. First of all, we spoke with Ms. Blackwell multiple times and warned her not to do this. In fact, we had her sign a piece of paper saying so. That's shown in the record as Ms. Blackwell stops herself from answering a question and says, I'm not supposed to talk about this. Second, we warned both the district court judge and the defense attorney that Ms. Blackwell was a difficult client and had proclivities for outbursts. I think the experienced defense counsel, as Judge Hamilton pointed out, didn't ask for anything. I think almost scoffed at the fact that this witness could be that unruly. But as it turned out, she of course sort of was. Number three on the steps we took, whenever we thought Ms. Blackwell was about to say something improper, we stepped in and made an objection. So the record shows us trying to do the best we can. And I think the court should also recognize that we don't pick the victims of our crimes or the people that are adjacent to our crimes. So there are many times we are going to have unruly witnesses and the court should expect us to do what we did here and try to prevent any of these outbursts, which we did. Now, I would like to move on to why Indiara was harmless, I think as Judge Sykes pointed out. First of all, this was non-strategic. It was something that came in, but it was never used. The government never talked about this. We tried to stray away from it. That is different than Lowry or Suslowski, where the government introduced the evidence, spoke about it, and actually introduced extraneous evidence to support that here. We have fleeting moments of improprieties. In a trial that was five days spanning 31 witnesses and over 1,100 pages of transcript, beyond that, I think it's important to place this evidence in context of the facts of this particular case. This case, the facts were novel-like. The jury was almost certain to be enthralled by Mr. Thomas's interstate kidnapping and the characters in this. By comparison, the 404B violations were rather mundane. Certainly, there may be cases where the 404B violations here might be more likely to sway the jury, but in the facts of this particular case, which were so interesting and captivating, it is difficult to believe that a couple statements with the first witness would have persuaded the jury based on propensity to commit the crime. The court has no further questions. The government is happy to rest on that. I have a question about a couple of guideline issues on the sentencing. Mr. Reitz, on the question of victim restraints, am I remembering correctly that somebody other than the two children who were kidnapped was put in restraints? Yes, Your Honor. The boyfriend of their mother? A family friend, Morris Bobbitt, was put in zip ties the night of the kidnapping. Does that count? I think it would, of course. Admittedly, we didn't argue that below or here, but yes. The issue wasn't raised at all in the district court, so I'm just trying to understand if it had been. The defense makes a good point that 3A1.3 does not seem to apply to kidnapping. The guidelines are quite specific about that, but I'm wondering how it might apply if people other than the victim of the kidnapping are restrained. Yes, we think that non-kidnapping victims being restrained would qualify under that guideline. You also argued in your brief that you thought you could avoid the limitations on the restrained victim enhancement by relying on the conspiracy theory. I have to say I'm not very persuaded by that, at least in this case, because the guidelines here are being applied for conspiracy on the basis that the crime was completed. You get the full offense level rather than the three-level discount for conspiracy or attempt. I'd be interested in your further comment on that. The application notes say that you shouldn't apply it when it's an element of offense. Understanding that the conspiracy was based on a completed kidnapping, either way, an element of conspiracy does not involve that. The elements of conspiracy are just an agreement to commit the kidnapping. We think in that situation, the conspiracy doesn't inherently... It would be very odd, though. A one-person kidnapping doesn't get the enhancement. A two-person conspiracy charged only as a conspiracy does. That's weird. I think it could be understood that way. I think in that situation, at least as applied here, there may be a good reason why Mr. Bobbitt's zip-tying would be relevant to that. Do we even need to decide this complex issue of guidelines interpretation? His count was off the charts. Yes. No, Your Honor. To the extent that this is a difficult guideline interpretation, no. It can be avoided here because with or without this, Mr. Thomas is still well above 43 in his guideline as life. Even accepting every objection that Mr. Thomas has made on appeal, he is still well above 43 in his guideline as life. And the same is true of the Aileen error here, that this is not a mandatory minimum sentence anyway, and so we don't have any kind of harm from an Aileen error. Right. The mandatory minimum of 20 years, which appears to be an error, did not drive the sentence because his sentence is driven by his guideline as life, so it's harmless on that and certainly not plain error on that or any of the other arguments. All right. Thank you, Mr. Wright. Thank you. Mr. Klobuchar? Thank you. Thank you, Your Honors. May it please the Court, my name is Ross Klobuchar from the University of Notre Dame Law School. I'll be addressing Mr. Thomas' challenges to sentencing and responding to the government's points with regards to that matter. First, after the United States v. Elaine, any fact, no matter how formal, little other than the prior conviction triggers the application of a mandatory minimum, must be submitted to the jury. Here, as the government considers that issue clearly, was not submitted to the jury either by appropriate jury instruction or special verdict form. Thus, the judicial fact-finding at sentencing with regards to the victim's age constitutes unconstitutional circumvention of the jury's preserved duties. Mr. Klobuchar, is there any evidence conflicting with the victim's testimony about their own ages? No, Your Honor, there was no admitted evidence conflicting with regards to the victim's ages. However, here, the only evidence that supported the finding of the victim's ages was the testimony from the victims themselves. There was no submission of photo identification or birth certificates that would have easily corroborated this information. However, the fact that this testimony alone would have permitted a jury to find on this issue. However, it does not push the court to find that no rational jury could have convicted Mr. Thomas of kidnapping, but not of kidnapping a minor. Relying on pure testimony unfiltered by the jury, perhaps if this issue had been necessary to the underlying conviction, this court could find that no rational jury could have believed it on that count, but not believed it on the other count. Here, there is a meaningful distinction that was raised by the government in its brief in United States v. Kirkland, where the court relied upon the fact that the jury had convicted the defendant of a brandishing offense, despite the fact that there was no evidence other than the evidence that permitted the conviction under the predicate offense of carrying a weapon in the use of a violent crime. Furthermore, the application of a mandatory minimum is a constitutional injury, thus the argument that it did not substantially impact Mr. Thomas' rights is legally insufficient. Here, the district court began its entire sentencing procedure by noting that the mandatory minimum applied to each of the three counts against Mr. Thomas, totaling 60 years, not merely 20 years. For a man the age of Mr. Thomas' age, this would effectively have been a life sentence. Thus, the distinction between a 60-year minimum sentence and the recommended guideline range, which again would be behoove me to mention that after Booker, the guideline range is no longer mandatory and the district court is free to disregard or depart from this based on any of the factors in Section 3553 of the U.S. Sentencing Statutes. Moving on to the guidelines issue, as this court noted, use of restraint enhancement is specifically prohibited in this instance, while the government does counter-arguing that it was applied to the conspiracy. The conspiracy guideline, as this court recommended, is quite complicated and it is at the very least ambiguous as to whether or not it has incorporated the factor of restraint under the kidnapping offense. Yes, Your Honor. In that case, why should we treat it as plain error, and why isn't it perfectly clear that any error would have been harmless? Your Honor, the court should treat that as a plain error because the language and the application under the actual kidnapping offense and use of restraint enhancement is quite clear. While with regards to whether or not it should apply to conspiracy is another issue, this was never articulated by the district court in any way. Any inference that this was applied to the conspiracy offense is highly dubious at best because there were two offense groups where the conspiracy requirement was applied to, both offense group one and two, and the use of restraint enhancement was only applied to offense group one, which constituted of kidnapping count one and conspiracy count, whereas offense group two consisted of kidnapping count two and conspiracy. Why the district court would apply the use of restraint enhancement for conspiracy in one offense group and not the other strikes counsel as bizarre. Furthermore, regardless of whether the district court... Counsel, you may think this is bizarre, but we're talking here about experienced professionals where no objection was raised, and the district judge seems to have made quite clear that Mr. Thomas was going to spend the rest of his life in prison regardless of the nuances of this calculation. So why is this not harmless? Here not only does the miscalculation of the sentencing guidelines impact Mr. Thomas' sentence because it undermines the credibility of the district court's sentencing decision, but here it was also clear from the sentencing record that the inflated point total directly impacted Mr. Thomas' sentence. Specifically, the district court mentioned on three separate occasions that the inflated total was outrageous, off the charts, and then in its reasoning for why it decided not to depart from the guidelines based on the arguments by trial counsel that Mr. Thomas' age, health, and other considerations warranted a departure from the recommended life sentence, the court reasoned that because this point... referenced the point total in its reasoning as to why this was such a serious offense. Thus, that inflated total clearly impacted Mr. Thomas' ultimate sentencing disposition, and that constitutes a plain error here. With regards to the vulnerable victim enhancements, those were misapplied because the sentencing guidelines application note, again, specifically prohibits the application of a vulnerable victim enhancement where the underlying offense guideline specifically incorporates the factor that makes the victim vulnerable. This court has favorably cited sister circuits and the Ninth Circuit that have found that instances of crime such as kidnapping a minor or enticement of a minor specifically incorporate those into the offense guidelines already and therefore should not be applied and constitute impermissible double counting. Thank you, Your Honor. Thank you, Mr. Klobuchar. Case is taken under advisement. Our thanks again to Notre Dame and its program and to the able counsel that you've provided in this case. The court will take the case, as I say, under advisement.